IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DEBRA KAY ERVIN, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | Civil No. 6:13-cv-5103-DGK |
| ) | Crim. No. 6:11-cr-5046-DGK |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING MOTION FOR POSTCONVICTION RELIEF AND
CERTIFICATE OF APPEALABILITY**

This case arises out of Movant Debra Kay Ervin's ("Movant" or "Ervin") guilty plea for being a felon in possession of a firearm, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Pending before the Court is Movant's pro se "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody" (Civ. Doc. 1).[1] Finding Movant's arguments are without merit and an evidentiary hearing is unnecessary, the Court denies the motion and declines to issue a certificate of appealability.

**Factual Background and Procedural History**

As the Government's statement of facts accurately summarizes the record documents, the Court essentially adopts the majority of the factual and procedural background facts from the Government's Suggestions in Opposition (Civ. Doc. 5).

On July 13, 2011, authorities went to Ervin's home to execute an arrest warrant for Jerry D. Morgan. (PSR, Crim. Doc. 21 at 6). Ervin was present during Morgan's arrest and consented to a search of her residence. *Id.* During the search, the authorities discovered three firearms,

---

[1] Throughout the opinion, references to civil case documents will be "Civ. Doc.__" while references to criminal case documents will be "Crim. Doc.__."

drug paraphernalia, and some stolen items. *Id.* Specifically, inside Ervin's bedroom, the authorities recovered two firearms, three scales (one of which field-tested positive for methamphetamine), two packs of rolling papers, and a small amount of marijuana. *Id.* Later that day, the authorities returned to Ervin's residence and recovered a stolen dishwasher and stolen range oven. *Id*.

On December 13, 2011, a one-count indictment that included a forfeiture allegation was returned by the Federal Grand Jury in Springfield, Missouri. (Crim. Doc. 1). The indictment charged Ervin with being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and (3). *Id*. The indictment also alleged that Ervin was a convicted felon and an admitted user of controlled substances. *Id.*

After retaining counsel, Ervin entered a plea of not guilty on February 16, 2012. (Crim. Doc. 11). On April 18, 2012, Ervin voluntarily changed her plea to guilty to Count One before United States Magistrate Judge James C. England, pursuant to a written plea agreement. (Crim. Doc. 16).

In her plea agreement, the parties agreed to a base sentencing level of 14 and a two-level enhancement under the 2011 United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2K2.1(b)(1)(A) because the offense involved at least three firearms. (Plea Agreement, Doc. 15 at 6-7). The parties did not agree to the proposed four-level enhancement based upon U.S.S.G. § 2K2.1(b)(6)(B). The parties agreed, however, that the Government's estimation did "not bind the Court or the U.S. Probation Office with respect to appropriate Guidelines levels." *Id.* at 7. Furthermore, they agreed that "the background, character, and conduct of the defendant, including the entirety of her criminal activities" may be included in the PSR. *Id*. at 5. "[T]hese disclosures are not limited to the count to which she has pleaded guilty." *Id.*

Based upon the 2011 Guidelines, the Probation Officer (the "P.O.") in the Presentence Report (the "PSR") recommended a total offense level of 17. (PSR, Crim. Doc. 21 at 7). Because Ervin was a prohibited person in possession of a firearm, the P.O. calculated Ervin's base sentencing level as 14. *Id.* She further recommended two sentence enhancements: a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A), because the offense involved three firearms; and a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possession of a firearm and ammunition in connection with another felony offense—receipt of stolen property. *Id.* After a three-level reduction for acceptance of responsibility, the P.O. calculated Ervin's total offense level at 17. *Id.* at 7. With a criminal history category of II, her sentencing range was 27 to 33 months. *Id.* at 14.

Ervin's attorney objected to the four-level enhancement for possession of a firearm and ammunition in connection with another felony offense. *Id.* at 17. In the PSR, the P.O. provided a detailed response to this objection. First, the P.O. pointed to Application Note 14 to U.S.S.G. § 2K2.1, which states that subsection U.S.S.G. § 2K2.1(b)(6)(B) applied if the firearm "facilitated, or had the potential of facilitating, another felony offense or another offense." (PSR, Crim. Doc. 21 at 17). In addition, the addendum to § 2K2.1 states that (b)(6)(B) applied "in the case of a drug trafficking offense in which a firearm is found in close proximity to . . . drug paraphernalia." *Id.* Also, the P.O. reasoned that "the presence of the firearm has the potential of facilitating another felony offense or another offense." *Id.*

Finally, the P.O. noted Ervin had "a pending felony charge of receipt of stolen property in Newton County, Missouri, Circuit Court, which resulted from the search warrant executed at the time of the instant offense." *Id.* The officer concluded: "The probation office clearly believes there is a connection between the defendant's possession of firearms and her ongoing involvement in felonious criminal activities." *Id.*

On December 13, 2012, the undersigned presided over Ervin's sentencing hearing. (Minute Sheet, Crim. Doc. 24). Ervin withdrew her objection to the four-level enhancement, and the undersigned sentenced Ervin to 27 months' imprisonment on Count One, with three years of supervised release. *Id.* On July 9, 2013, Ervin filed a timely *pro se* motion under 28 U.S.C. § 2255.

## DISCUSSION

Ervin argues the Court should grant her motion because: (1) her attorney provided ineffective assistance of counsel when he failed to properly object to the four-level enhancement based upon a then-pending state court theft charge; and (2) her sentence is unconstitutional in light of the holdings in the two recent United States Supreme Court decisions of *Alleyne v. United States*, 133 S. Ct. 2151 (2013) and *Peugh v. United States*, 133 S. Ct. 2072 (2013). Because both arguments lack merit, the Court denies Movant's motion.

**I.  Movant's claims lack merit.**

    **A.  Movant's ineffective assistance of counsel claims lack merit.**

Ervin's first claim is that she received ineffective assistance of trial counsel. She contends her attorney erred in failing to object to the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Specifically, Ervin argues that he should have objected to this enhancement because the primary basis for it—the pending Newton County, Missouri charge for receipt of stolen property—was later dismissed. His failure to do so, according to Movant, prejudiced her because it increased her sentence. The Court disagrees.

To succeed on a claim of ineffective assistance of counsel, a movant must show that "(1) trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney, and (2) trial counsel's deficient performance prejudiced the defense." *Armstrong v. Kemna*, 534 F.3d 857,

4

863 (8th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984)). Failure to satisfy either prong is fatal to the claim, and the court need not reach the performance prong if the defendant suffered no prejudice from the alleged ineffectiveness. *See Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997).

To establish prejudice, a movant must show that the outcome would have been different had counsel's performance not been deficient. If the movant cannot show a reasonable probability that the outcome would have been different, he cannot show prejudice. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).

Judicial review of trial counsel's performance is highly deferential, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Middleton v. Roper*, 455 F.3d 838, 846 (8th Cir. 2006). Trial counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Strategic choices made in the shadow of a lack of preparation or investigation, however, are not protected by the same presumption. *Armstrong*, 534 F.3d at 864.

In the present case, Ervin has failed to demonstrate that her attorney's representation was deficient. Contrary to Ervin's contentions, her attorney did, albeit ambiguously, [2] object to the four-level enhancement. (PSR, Crim. Doc. 21 at 17). In response to this objection, the P.O. thoroughly explained the basis for the four-level enhancement. *Id.* Counsel then withdrew his objection during the sentencing hearing. (Minute Sheet, Crim. Doc. 24).

---

[2] In raising his objection to the four-level enhancement, Mr. Carver mistakenly cited U.S.S.G. § 2K2.1(b)(1)(A). (PSR, Crim. Doc. 21 at 17). As stated in the plea agreement, the parties had previously agreed to a *two-level* enhancement under U.S.S.G. § 2k2.1(b)(1)(A). The *four-level* enhancement, however, was not agreed to by the parties and only later recommended by the P.O. (PSR, Crim. Doc. 21 at 7). Thus, it appears that Mr. Carver was actually objecting to the four-level enhancement assessed in the PSR under U.S.S.G. § 2K2.1(b)(6)(B). *Id.*

5

Under the circumstances, withdrawing the objection was not unreasonable. The 2011 Guidelines make clear that the four-level enhancement under § 2K2.1(b)(6)(B) applies when "the defendant…used or possessed any firearm or ammunition in connection with another felony offense…." U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B) (2011). This section applies when "the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively." U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B) cmt n.14(A) (2011). Within the meaning of this section, the term "another felony offense" is defined as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, *regardless of whether a criminal charge was brought, or a conviction obtained.*" U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B) cmt n.14(C) (2011) (emphasis added).

Here, Ervin pled guilty to possessing three firearms and the searches of her home revealed several stolen items. From this, it is plausible that the possession of the firearms had the potential of facilitating her dealing in stolen property, and, accordingly, the four-level enhancement was warranted in this case. This conclusion is not undermined by the fact that the state officials never charged[3] Ervin with an offense related to the stolen property, because the term "felony offense" under this section of the guidelines does not require a criminal charge. Since there was a reasonable basis supporting the four-level enhancement that was clearly articulated to her attorney in the PSR addendum, counsel's withdrawal of his objection at sentencing did not constitute deficient performance.

---

[3] The parties provide differing accounts of whether Movant was ever charged with a crime for receiving stolen property. Movant claims that Newton County dismissed the charges related to this alleged offense. (Civ. Doc. 2 at 5). On the other hand, the Government states that Newton County never even charged Movant with a crime. (Civ. Doc. 5 at 7). Because whether or not Movant was ever charged with a crime is immaterial to the disposition of her argument, the Court assumes for the sake of argument that Newton County never charged Movant with a crime.

Even assuming that counsel's withdrawal of the objection was deficient, Ervin did not suffer prejudice from this assumed error. There also existed ample evidence in the record that the firearms had the potential of facilitating another felony offense unrelated to the stolen property. During the search of Ervin's home, the police located marijuana, scales, rolling papers, and trace amounts of methamphetamine. Thus, it is plausible that the firearms were possessed in order to facilitate the felony offense of drug distribution. Because the probation officer provided this valid ground as an alternative basis for the four-level enhancement, a more thorough and sustained objection from counsel regarding the stolen property basis would not have changed the final sentence.

Although Movant's argument is unclear, it appears that she also asserts that counsel was ineffective for failing to raise an *Alleyne* challenge[4] regarding the Government's failure to prove beyond a reasonable doubt that she possessed the weapons.[5] This argument fails for two primary reasons. First, the United States Supreme Court did not decide *Alleyne* until six months after Movant's sentencing. Accordingly, Mr. Carver cannot be deficient for failing to raise an *Alleyne* challenge before the case was even decided. Second, even assuming that an *Alleyne*-like challenge enjoyed support in the case law at the time of sentencing, such a challenge would have failed because Movant pled guilty to possessing the weapons. Thus, her attorney did not provide ineffective assistance of counsel.

B.     **Movant's "Due Process" claims lack merit.**

Although Movant's second argument is couched in terms of a due process violation, the substance of her argument is that her sentencing violates the holdings of *Alleyne* and *Peugh*. In

---

[4] The Court discusses what constitutes an *Alleyne* challenge in Section I.B.

[5] In her reply brief, Movant states: "Petitioner's counsel was ineffective when he failed to object to the enhancement for guns in the petitioner's presentence report. It was never proven beyond a reasonable doubt that the said weapons were fact owned by the petitioner, nor was it proven that [s]he had access to said weapons." ("Petitioner's Response to Government's Objections," Civ. Doc. 8 at 1).

7

*Alleyne*, the Supreme Court held that because "mandatory minimum sentences increase the penalty for a crime….any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. 2151, 2155 (2013). In *Peugh*, the Supreme Court held that an *ex post facto* violation occurs "when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." 133 S. Ct. 2072, 2078 (2013).

Movant's claims fail for multiple reasons. As a threshold matter, the holdings in *Alleyne* and *Peugh* have no applicability in this collateral attack on her sentence. In neither decision did the Supreme Court state that the respective holdings applied retroactively to cases on collateral review. Because the Supreme Court was silent on the retroactive application, these decisions do not apply to Ervin's 2255 motion. *See Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013) (J. Easterbrook) (holding that *Alleyne* did not apply retroactively to a Movant's successive motion for 2255 collateral relief); *Hawkins v. United States*, 724 F.3d 915, 917 (7th Cir. 2013) (J. Posner) (holding that *Peugh* did not apply retroactively to a movant's 2255 motion).

Even assuming that these decisions retroactively applied on collateral review, both are factually inapplicable here. As for her *Alleyne* claim, Ervin alleges that the four-level enhancement for possessing the weapon in connection with the felony offense of receipt of stolen property directly violates the holding of that case. In particular, she contends she received a higher sentence despite the fact that the receipt of stolen property offense was an "element that she did not plead guilty to, was not presented to a jury and was not proved, in any way, beyond a reasonable doubt." (Civ. Doc. 2 at 9).

Movant's argument excises a crucial component of the *Alleyne* holding, namely that the "fact" that must be proven beyond a reasonable doubt is one that increases the *mandatory*

8

minimum statutory sentence. 133 S. Ct. at 2155. As *United States v. Booker* makes clear, the Guidelines are "merely advisory provisions that [are] recommended, rather than required." 543 U.S. 220, 233 (2005). Thus, *Alleyne*'s holding is inapplicable in this case, because the facts considered in sentencing only led to an increase in the advisory minimum sentence, not an increase in statutory mandatory minimum punishment. Under the relevant statute, 18 U.S.C. § 922(g), no mandatory minimum sentence exists and the maximum sentence is ten years' imprisonment. 18 U.S.C. § 924(a)(2). This Courts' sentence of twenty-seven months based upon the Guidelines falls well-within the statutory range of punishment. Accordingly, there is no *Alleyne* violation here.

*Peugh* is similarly inapposite. Construing Ervin's second argument liberally, she contends that the Court should have applied the 2010 Guidelines rather than the 2011 Guidelines, because the crime occurred in July 2011, approximately six months prior to the effective date of the 2011 Guidelines. Again, Ervin overlooks an important component of the Supreme Court's holding—i.e., that an *ex post facto* violation only occurs when the newer version of the Guidelines leads to a *higher* sentencing range. 133 S. Ct. at 2078. Here, Movant's Guideline sentence range—27 to 33 months—was the same under either version of the Guidelines. *See* U.S. Sentencing Guidelines Manual (2010) (possessing the same relevant provisions as the 2011 Guidelines). Therefore, Movant's *Peugh* challenge fails.

## II. No evidentiary hearing is required.

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id*. (quoting *Watson*

*v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)); *see also Sanders v. United States*, 347 F.3d 720, 721 (8th Cir. 2003) (holding a § 2255 motion may be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact).

As discussed above, Movant's claims are either contradicted by the record, or if accepted as true, they would not entitle her to relief. Consequently, no evidentiary hearing is required or will be held.

### III.     No certificate of appealability should be issued.

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). District courts customarily address this issue contemporaneously with the order on the motion. *See Pulliam v. United States*, No. 10-3449-CV-S-ODS, 2011 WL 6339840, at *4 (W.D. Mo. Dec. 16, 2011).

A certificate of appealability should be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires the movant to demonstrate "that reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 464 U.S. 800, 893 n.4 (1983)). In the present case, the Court holds no reasonable jurist would grant this § 2255 motion, and so the Court declines to issue a certificate of appealability.

### Conclusion

For the reasons discussed above, the motion (Civ. Doc. 1) is DENIED and the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Date:   March 5, 2014              /s/ Greg Kays
                                   GREG KAYS, CHIEF JUDGE
                                   UNITED STATES DISTRICT COURT